STATE of Missouri ex rel. STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE, DIVISION OF WELFARE, Relator-Appellant,

v.

Finis M. HOGG and Gertie A. Hogg, Respondents.

No. 9032.

Springfield Court of Appeals, Missouri.

March 26, 1971.

that would affect his [a] needs *or* [b] right to receive benefits, *or* [II] if it be shown such benefits were obtained through misrepresentation, non-disclosure of material facts, or through mistake of fact . . . .' " (All emphasis herein is ours.)

Elmore G. Crowe, Curtis J. Quimby, Edward D. Summers, Jefferson City, for relator-appellant.

Briney, Welborn & Spain, Joe Welborn, James E. Spain, Bloomfield, for respondents.

STONE, Judge.

For the use and benefit of the division of welfare, "an integral part of the department of public health and welfare" [§ 207.-010],[1] this action was instituted on May 19, 1969, in the name of the State of Missouri [Rule 52.01, V.A.M.R.; § 507.010] to recover from defendants Finis M. and Gertie A. Hogg, husband and wife, the sum of $11,040 alleged to have been the aggregate amount of old age assistance benefits paid to them from November 1956 through March 1969. At the close of plaintiff's evidence, defendants' motion for a directed verdict was sustained; and, from the judgment for defendants entered upon the verdict so directed, plaintiff·appeals.

As we recently had occasion to point out in State ex rel. State Dept. of Public Health & Welfare v. Ruble, Mo.App., 461 S.W.2d 909, 913, § 208.210(2) dealing with the recovery of benefits by the division of welfare is "a bifurcated statute whereby the General Assembly has disjunctively afforded the division of welfare different avenues of recovery," to wit, *"either* [I] 'If . . . it is found the recipient . . . was possessed of any property *or* income in excess of the amount reported

In its petition, instant plaintiff pleaded, inter alia, that in their several written applications "for the purpose of obtaining old age assistance benefits . . . defendants falsely represented to the plaintiff . . . that they did not own or possess real or personal property that would disqualify them to receive such benefits under state laws";[2] that, on the contrary (so plaintiff averred in *paragraph 5*) during the period old age assistance benefits in the aggregate sum of $11,040 were paid to them, i. e., from November 1956 to March 1969, defendants "owned or possessed cash and resources in excess of the statutory maximum"; and that (so plaintiff alleged in *paragraph 6*) "each and every payment made to the defendants . . . were (sic) obtained through misrepresentations, non-disclosure of material facts, or through mistake of fact . . . ." Plaintiff thus pleaded alternately, as it was privileged to do [Rule 55.12; § 509.110; Kaiser Aluminum & Chemical Sales, Inc. v. Lingle Refrigeration Co., Mo.App., 350 S.W.2d 128, 131(6)·], both of the grounds or "avenues of recovery" [Ruble, supra, 461 S.W.2d at 913] afforded by § 208.210(2) which were in no wise repugnant or inconsistent.

Plaintiff offered in evidence five "Eligibility Statements" signed by both defendants, which were completed on comprehensive forms designed to elicit and develop detailed information concerning defendants' financial status and resources. In the

1. Except as otherwise specifically stated, all statutory references are to RSMo 1969, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

2. Defendants were ineligible for old age assistance benefits, if they, either individually or jointly, owned or possessed

cash or securities in excess of $1,000 prior to August 29, 1959 [§ 208.010(3), Laws 1955, p. 688, otherwise amended Laws 1957, p. 694] or cash or securities in excess of $1,500 from and after that date. § 208.010, subsec. 2(2), RSMo 1959; otherwise amended Laws 1963, p. 377; Laws 1965, 1st Ex.Sess., p. 807; Laws 1967, p. 321; Laws 1967, p. 323.

earliest statement dated *September 24, 1956,* and identified as *Exhibit E,* defendants represented that they had 36¢ in cash, no checking account, no savings account and no time deposits, and that they then owned and resided on a 13-acre tract valued at $2,000 and subject to a "recorded indebtedness" of $760. The next statement dated *October 1, 1957,* and identified as *Exhibit D* included representations that defendants then had no cash, no checking account, no savings account and no time deposits and still resided on the 13-acre tract then subject to a $500 "mortgage." The same declarations of no cash, no checking account, no savings account and no time deposits were repeated in the statement dated *May 18, 1959,* and identified as *Exhibit C,* which also showed that defendants had acquired an additional 40 acres and then resided on a 53-acre tract valued at $2,900 and subject to a $450 "mortgage." The next statement dated *June 1, 1966,* and identified as *Exhibit B* likewise reported no cash, no checking account, no savings account and no time deposits, as well as defendants' continued residence on the same 53-acre tract then valued at $4,000 and subject to no "mortgage." In the final eligibility statement dated *March 25, 1969,* and identified as *Exhibit A,* which triggered further investigation by plaintiff and the institution of this action, defendants revealed for the first time that they had a checking account of "about $1,200," but they repeated prior representations that they had no cash, no savings account and no time deposits and again recorded the fact of their residence on the same 53-acre

farm then valued at $4,500 and subject to no "mortgage." *Exhibits A and B* were *admitted* in evidence, but *Exhibits C, D and E* were *excluded* on the theory that recovery of benefits paid more than five years prior to the institution of this action on April 17, 1969, was barred by the five-year statute of limitations [§ 516.120] applicable to actions brought in the name or for the benefit of the state, in the same manner as to actions by private parties. § 516.360.

Plaintiff's witness Shain, executive vice-president of the State Bank of Fisk, Missouri, produced fourteen "permanent ledger sheets of the checking account of [defendants] F. M. or Gertie Hogg" in that bank, identified collectively as *Exhibit J. Three* of these ledger sheets (*unnumbered*) reflected scattered transactions between April 24, 1950, and April 12, 1960, in a relatively inactive account carried in the sole name of defendant "F. M. Hogg." However, the remaining eleven ledger sheets *numbered* by the bank from 3 to 13, inclusive, recorded a multitude of transactions between September 4, 1962, and October 21, 1968, in the active account of "F. M. or Gertie Hogg," [3] and showed that the balance in defendants' bank account was in excess of $1,500 (a) during the entire period *from September 4, 1962,* the date of the first entry on sheet numbered 3, *to January 7, 1965,* on which date a check for $3,000 was charged to the account,[4] and (b) during the entire period *from April 28 to November 15, 1967,* on which latter date a check for $2,950 was charged to the

3. As witness Shain readily conceded, there must have been other ledger sheets not produced upon trial, to wit, (a) sheets numbered 1 and 2 reflecting transactions in the account of "F. M. or Gertie Hogg" *prior to September 4, 1962,* the date of the first entry on sheet numbered 3 which showed a balance of $1,604.09 carried forward from a previous (*unproduced*) sheet, and (b) a sheet or sheets reflecting transactions in this account *subsequent to October 21, 1968,* the date of the last entries on sheet numbered 13 recording a

deposit of $700 and a new balance of $1,638.88.

4. *Exhibit K,* identified by witness Shain as "a record prepared by one of our bookkeepers at my direction, showing the complete record of *time certificates of deposit* in the name of Finis M. or Gertie Hogg" but excluded from evidence upon the objection of defendants' counsel, listed time certificate of deposit No. 1085 for $3,000 as having been purchased by and issued to "Finis M. or Gertie Hogg" on *January 7, 1965.*

account.[5] That portion of *Exhibit J* reflecting the status of defendants' bank account prior to April 17, 1964, was excluded from evidence, but the remainder of the exhibit pertaining to the period subsequent to that date was admitted.

Section 208.210, subsec. 3, states that "[t]he possession of undeclared property by a recipient [of public assistance] or his spouse with whom he is living shall be *prima facie evidence of its ownership during the time benefits were granted,* and the burden to prove otherwise shall be upon the recipient or his legal representative." The effect of this statutory provision "is to create [or constitute] certain specified facts when proved as prima facie evidence of a further fact, i. e., proof of possession of undeclared property is prima facie evidence of its ownership by recipient during the time benefits were granted." Ruble, supra, 461 S.W.2d at 913. "Prima facie evidence" is such evidence which, although not compelling a verdict for the party whose contention it supports, "is sufficient to satisfy the burden of proof to support a verdict in favor of the party by whom it is introduced when not rebutted by other evidence." Ruble, supra, 461 S.W.2d at 913(3). See Cavic v. Missouri Research Laboratories, Inc., Mo.App., 416 S.W.2d 6, 8–9(4); City of Jackson ex rel. Hoffmeister v. LaChance, Mo.App., 372 S.

W.2d 479, 482; 32A C.J.S. Evidence § 1016, l.c. 624–625. In the case at bar, the admitted portion of the ledger sheets collectively identified as Exhibit J constituted prima facie evidence of defendants' possession of the checking account balances shown thereon, and thus prima facie evidence of their ownership of cash in excess of $1,500 at least during the hereinbefore-noted periods subsequent to April 17, 1964,[6] rendering them ineligible for old age assistance benefits during those periods. § 208.010, subsec. 2(2), RSMo 1959; otherwise amended Laws 1963, p. 377; Laws 1965, 1st Ex.Sess., p. 807; Laws 1967, p. 321; Laws 1967, p. 323.

Pointing out, inter alia, that recovery of benefits is authorized on either of the two statutory grounds or "avenues of recovery" hereinbefore noted, i. e., either "[I] If . . . it is found that the recipient or his spouse was possessed of any property *or* income in excess of the amount reported that would affect his [a] needs *or* [b] right to receive benefits, *or* [II] if it be shown such benefits were obtained through misrepresentation, non-disclosure of material facts, or through mistake of fact . . . ." [§ 208.210(2); Ruble, supra, 461 S.W.2d at 913], counsel for plaintiff-appellant assert in their brief that a submissible case was made "under both of these alternatives."

---

5. A check for $1,000 was charged to defendants' bank account on *November 15, 1966* [Exhibit J] and, *on the same date,* time certificate of deposit No. 173 for $1,000 was· issued to them [Exhibit K]. On *November 15, 1967,* this $1,000 c/d was paid [Exhibit K], a check for $2,950 was charged to defendants' bank account [Exhibit J], and time certificate of deposit No. 285 for $4,000 was issued to them [Exhibit K]. Passing recordation of other minutiae, we only note Exhibit K shows that time certificates of deposit Nos. 401 and 420, each in the principal sum of $4,500, had been purchased by defendants on November 15, 1968, and January 8, 1969, respectively, and that both were still outstanding and unpaid at the time of trial.

6. The plain language of § 208.210(3), i. e., that "[t]he possession of undeclared property . . . shall be prima facie evidence of its ownership *during the time benefits were granted* . . .," would seem to indicate that such prima facie evidence of instant defendants' possession of cash in excess of $1,500 during the periods (a) from April 17, 1964 (ledger sheets reflecting bank balances prior to that date were excluded from evidence) to January 5, 1965, and (b) from April 28 to November 15, 1967, constituted prima facie evidence of defendants' ownership of cash in excess of $1,500 during the *entire* time benefits were granted and paid to them. However, since determination of this appeal does not require us so to hold, we do not indulge in obiter dictum to that effect.

On the other hand, the first two points in defendants'-respondents' brief present their contention that plaintiff could recover no payments to defendants prior to April 17, 1964, because "there was no evidence of any material misrepresentation or fraud" that would have tolled the running of the five-year statute of limitations. § 516.120. In their third point, counsel for defendants-respondents submit that "the sole evidence on which a recovery could be based was the ledger sheets for the months in which [defendants'] bank accounts (sic) exceeded the minimum amount of money to which [defendants] were entitled in order to remain eligible for old age assistance"; and, in their conclusion, they state that "assuming [plaintiff] would be entitled to recover payments made at the time [defendants'] bank account exceeded the $1,500 minimum allowed by statutes, the most [plaintiff] could recover would be $1,489."

■ However, in the course of argument counsel undertake to sustain the trial court's direction of a verdict on the theory that plaintiff's petition was "based upon fraud," that there was no evidence of actionable fraud, and that therefore plaintiff was not entitled to recover as a matter of law, because it "cannot bring an action on one theory and recover on another." Of course, we recognize that courts should not suffer a plaintiff to plead his case on one theory and recover on another [Copher v. Barbee, Mo.App., 361 S.W.2d 137, 145(9); Moore v. State Farm Mutual Auto. Ins. Co., Mo.App., 381 S.W.2d 161, 166(5)], but there is no basis for application of that principle here. True, plaintiff's petition did state a cause of action for recovery on the *second* statutory ground or avenue of recovery, i. e., that "benefits were obtained through misrepresentation, non-disclosure of material facts, or through mistake of fact" [§ 208.210(2)], and also included specific averments of defendants' acts and conduct said to have "constituted a continuing fraud upon plaintiff from November 1956 to March 1969" by reason of which "plaintiff [allegedly] was prevented

from discovering said fraud until January 1969" and the running of the five-year statute of limitations was tolled. § 516.-120(5). However, we have no doubt but that, as hereinbefore noted, plaintiff's petition also stated a cause of action for recovery on the *first* statutory ground or avenue of recovery, i. e., that defendants were "possessed" of "property . . . in excess of the amount reported that would affect [their] . . . right to receive benefits . . . ." Those two statutory grounds or avenues of recovery being in no wise repugnant or inconsistent, plaintiff had a right so "to state [its] case in a double aspect" [Kaiser Aluminum & Chemical Sales, Inc., supra, 350 S.W.2d at 131(6)—see Rule 55.12; § 509.-110]; and, if a prima facie case had been presented on either ground or avenue of recovery, a verdict for defendants could not properly have been directed at the close of plaintiff's evidence.

Having hereinbefore found that the admitted portion of the ledger sheets identified as Exhibit J did constitute prima facie evidence of defendants' possession and ownership of cash in excess of $1,500, at least during certain periods subsequent to April 17, 1964, which rendered them ineligible for old age assistance benefits during those periods [§ 208.010, subsec. 2(2), RSMo 1959, V.A.M.S. otherwise subsequently amended], it necessarily follows that plaintiff presented a submissible case on the *first* statutory ground or avenue of recovery [§ 208.210(2)] and that, therefore, the trial court erred in directing a verdict for defendants at the close of plaintiff's evidence. Since the judgment for defendants must be set aside and the cause remanded for retrial upon all issues anyway, and since, no doubt, additional evidence will be adduced upon such retrial and copies of excluded Exhibits F, G, H and I will be timely delivered to defendants' counsel, we need not, and therefore do not, discuss and rule other questions pertaining to (a) submissibility on the second statutory ground or avenue of recov-

ery, (b) tolling of the five-year statute of limitations [§ 516.120(5)], or (c) admissibility of the above-lettered exhibits.

The judgment for defendants is set aside and the cause is remanded for retrial upon all issues.

TITUS, P. J., and HOGAN, J., concur.